# United States Court of Appeals
### For the Eighth Circuit

———————————————

No. 23-3572

———————————————

Maurice Rose

*Petitioner - Appellant*

v.

United States of America

*Respondent - Appellee*

——————————

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

——————————

Submitted: January 15, 2025
Filed: August 29, 2025

——————————

Before LOKEN, ARNOLD, and KELLY, Circuit Judges.

——————————

LOKEN, Circuit Judge.

In April 2002, Maurice Rose attempted to kill a government witness in a federal drug and firearms case, shooting him multiple times in an effort to prevent his testimony against one of Rose's associates who was charged with possession of heroin and a firearm. A jury convicted Rose of (1) attempting to kill a person with the intent to prevent testimony in an official proceeding, in violation of 18 U.S.C. § 1512(a)(1)(A) (1996), and (2) using a firearm during a crime of violence related to

the attempted killing, in violation of 18 U.S.C. § 924(c) (1998). Rose appealed, challenging the victim's identification and the sufficiency of the trial evidence. We affirmed his conviction and 330-month sentence. United States v. Rose, 362 F.3d 1059 (8th Cir. 2004).

Following prior unsuccessful attempts to obtain post-conviction relief, Rose applied for leave to file a successive motion for relief under 28 U.S.C. § 2255 based upon the Supreme Court's recent decisions in Sessions v. Dimaya, 584 U.S. 148 (2018), and United States v. Davis, 588 U.S. 445 (2019), which altered the definition of "crime of violence" in § 924(c)(3). We granted his request without addressing the merits of the claims. Rose v. United States, No. 19-1785 (8th Cir. Oct. 22, 2019). Eight months later, Rose moved to vacate his conviction for using a firearm during a crime of violence, relying on Davis. Two years later, he filed a supplement, arguing that the Supreme Court's decision in United States v. Taylor, 596 U.S. 845 (2022), established that the offense of witness tampering by attempted murder does not qualify as a "crime of violence" and therefore his conviction for violating § 924(c) was unlawful and must be vacated.

The district court[1] denied the motion to vacate. Applying our precedent and adopting reasoning from Seventh, Ninth, and Eleventh Circuit decisions, the court ruled that the attempted killing of another person remains a crime of violence. However, the court issued a certificate of appealability, concluding that Rose's claims under Davis and Taylor raised issues that "are debatable among reasonable jurists," that "a court could resolve . . . differently," or that "deserve further proceedings." See 28 U.S.C. § 2253(c). We therefore have jurisdiction to review the court's denial of the second or successive § 2255 relief. Reviewing whether Rose's § 1512(a)(1)(A)

---

[1]The Honorable Sarah E. Pitlyk, United States District Judge for the Eastern District of Missouri.

offense was a crime of violence *de novo*, we affirm. See <u>McCoy v. United States</u>, 960 F.3d 487, 489 (8th Cir. 2020) (standard of review).

**A.** The initial denial of post-conviction relief established that Rose was lawfully convicted of the attempted killing of a government witness in violation of 18 U.S.C. § 1512(a)(1) (1996).[2]  The issue on appeal is whether this offense was a predicate offense establishing that Rose also violated 18 U.S.C. § 924(c)(1)(A), which provides for increased punishment of an offender who uses or carries a firearm "during and in relation to any crime of violence."  When Rose was convicted, § 924(c)(3) defined a "crime of violence" as "an offense that is a felony" and:

> **(A)** has as an element the use, attempted use, or threatened use of physical force against the person or property of another [(known as the "elements" or "force" clause)], or

---

[2]The statute provides as relevant here:

**(a)(1)** Whoever kills or attempts to kill another person, with intent to --

> **(A)** prevent the attendance or testimony of any person in an official proceeding;
>
> **(B)** prevent the production of a record, document, or other object, in an official proceeding; or
>
> **(C)** prevent the communication by any person to a law enforcement officer or judge of the United States of information relating to the commission or possible commission of a Federal offense or a violation of conditions of probation, parole, or release pending judicial proceedings;

shall be punished . . . .

**(B)** that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense [(known as the "residual clause")].

In <u>Davis</u>, a divided Supreme Court held that the residual clause in § 924(c)(3)(B) is unconstitutionally vague. 588 U.S. at 448. Following <u>Davis</u>, we have held that felonies that only meet the residual clause do not qualify as crimes of violence, but those that qualify under the elements clause remain crimes of violence. See, e.g., <u>Jones v. United States</u>, 39 F.4th 523, 526 (8th Cir. 2022); <u>Kidd v. United States</u>, 929 F.3d 578, 581 (8th Cir. 2019). It is now well established "that in the context of a statutory definition of '*violent* felony,' the phrase 'physical force' means *violent* force -- that is, force capable of causing physical pain or injury to another person." <u>Johnson v. United States</u>, 559 U.S. 133, 140 (2010).

In <u>Taylor</u>, the Court concluded that an attempted Hobbs Act robbery conviction is not a crime of violence under § 924(c)(3)(A) because it does not categorically involve "the use, attempted use, or threatened use of physical force" the statute requires. 596 U.S. at 851-52, 860. The Court first clarified how to determine whether a federal felony is a crime of violence:

> To determine whether a federal felony may serve as a predicate for a conviction and sentence under the elements clause . . . we must apply a "categorical approach." We must because the clause poses the question whether the federal felony at issue "has *as an element* the use, attempted use, or threatened use of physical force." § 924(c)(3)(A). And answering that question does not require -- in fact, it precludes -- an inquiry into how any particular defendant may commit the crime. The only relevant question is whether the federal felony at issue always requires the government to prove -- beyond a reasonable doubt, as an element of its case -- the use, attempted use, or threatened use of force.

Id. at 850 (cleaned up). A person commits attempted Hobbs Act robbery by the attempted "unlawful taking or obtaining of personal property from the person . . . of another, against his will, by means of actual or threatened force." 18 U.S.C. § 1951(b)(1). The Court concluded that the offense is not categorically a crime of violence because it does not have as an element the use, attempted use, or threatened use of physical force. "[T]o convict a defendant of attempted Hobbs Act robbery, the government does not have to prove any of those things" because the statute could be violated through an *attempted threat* of force. Id. at 860. The focus in Taylor was whether the term "threatened use of force" encompasses an attempted threat. The Court's conclusion was narrow -- a crime of violence does not exist when an offense only requires an attempt to threaten. Id. at 851-52, 860.

**B.** Rose's underlying offense was attempted murder of a witness, not attempted robbery. Using the categorical approach, we "compare[] the elements of the offense of conviction with the requirements of the [elements] clause" and determine whether the offense has as an element the use, attempted use, or threatened use of physical force. United States v. Hari, 67 F.4th 903, 910 (8th Cir.) (quotation omitted), cert. denied, 144 S. Ct. 436 (2023). "If any . . . of the acts criminalized do not entail that kind of force, the statute of conviction does not categorically match the federal standard." Borden v. United States, 593 U.S. 420, 424 (2021) (plurality opinion).

However, "[w]hen determining whether a prior conviction was for a crime of violence, we must first consider whether the statute violated is divisible or indivisible." United States v. Peeples, 879 F.3d 282, 286 (8th Cir. 2018). If the statute is divisible -- "defines multiple crimes" -- we apply the modified categorical approach, considering only the offense of which the defendant was convicted." Hari, 67 F.4th at 910 (quotation omitted); see Descamps v. United States, 570 U.S. 254, 261-63 (2013). Section 1512 is obviously divisible. See, e.g., 18 U.S.C. § 1512(c) (criminalizing corrupt tampering with documents for official proceedings).

Applying Peeples, the district court concluded that § 1512(a)(1) is also divisible and applied the modified categorical approach. Rose does not contest this conclusion on appeal and rightly so. The statute "list[s] elements in the alternative, and thereby define[s] multiple crimes," with different offenses that vary in seriousness and punishment. Therefore, the "alternative elements" are divisible and are assessed under the modified categorical approach. Mathis v. United States, 579 U.S. 500, 505 (2016). Therefore, "[w]e examine the charging document, plea colloquy, and comparable judicial records to determine which part of the statute the defendant violated, and then we determine whether a violation of that statutory subpart is a crime of violence." Peeples, 879 F.3d at 286 (quotation omitted).

**C.** Rose argues that § 1512(a)(1) is not categorically a crime of violence because it is possible to violate the statute without violent action that requires "the use, attempted use, or threatened use of physical force." Rose anchors his argument with an example, citing United States v. Casteel, where a conviction for tampering with a witness by attempted murder was upheld even though the third party that the defendant solicited to commit the murder refused to participate. 721 F. Supp. 2d 842, 860-61 (S.D. Iowa 2010), aff'd, 663 F.3d 1013 (8th Cir. 2011), cert. denied, 565 U.S. 1275 (2012). He posits that a person violates § 1512(a)(1) by soliciting another to help murder a witness even when the attempt is foiled because the solicited person refused to help. Under Taylor, Rose asserts, "incipient crimes satisfied by non-violent attempts not requiring 'the use, attempted use, or threatened use of physical force,' do not categorically satisfy" the elements clause.

Rose's argument goes beyond the Supreme Court's ruling in Taylor, where the offense at issue was attempted Hobbs Act robbery. The Court rejected the government's argument that an attempt consisting of "an intention to take property by force or threat, along with a substantial step toward achieving that object," is a crime of violence simply because its completion would have been a crime of violence. "[A]n intention is just that, no more," the Court explained. "The elements clause . . .

asks whether the defendant did commit a crime of violence." 596 U.S. at 851-53. Rose's underlying offense was attempted murder, not attempted robbery. He argues that attempted murder is categorically not a crime of violence, essentially painting all attempts with the same brush. But in Taylor, the divided Court only resolved a narrower question: whether an offense that requires an *attempted threat* to use physical force is a crime of violence because it meets the elements of a § 924(c)(A) predicate offense.

Since Taylor, we have repeatedly held that murder is categorically a crime of violence because it involves the use of physical force against the person or property of another. Janis v. United States, 73 F.4th 628, 636 (8th Cir. 2023) (second degree murder), cert. denied, 144 S. Ct. 1019 (2024); United States v. Bagola, 108 F.4th 722, 728 (8th Cir. 2024) (first degree murder); cf. Brewer v. United States, 89 F.4th 1091, 1093-94 (8th Cir.) (voluntary manslaughter), cert. denied, 145 S. Ct. 260 (2024). If murder qualifies as "the use of physical force," then attempted murder logically should qualify as "the attempted use of physical force."

Rose argues that attempted murder does not qualify as a crime of violence because it can occur with no use of force or threat. But a crime of violence does not require an act of violence. It requires only that the defendant attempted the use of physical force against the person or property of another. At common law, an attempt to kill required "a specific intent to commit the unlawful act." Braxton v. United States, 500 U.S. 344, 351 n.* (1991). Although § 1512(a)(1) criminalizes the attempted killing of a witness, the *mens rea* required is that of attempted murder. "[O]ur cases hold that to find a defendant guilty of an 'attempt' to commit a crime under a federal criminal statute, a jury must find that the defendant had the specific intent to commit that crime." United States v. Kenyon, 481 F.3d 1054, 1069 (8th Cir. 2007). "Although a murder may be committed without an intent to kill, an attempt to commit murder requires a specific intent to kill." Braxton, 500 U.S. at 351 n.*. Therefore, attempted murder and attempt to kill a witness with the intent to prevent

testimony under § 1512(a)(1) are crimes of violence. Taylor did not affect this conclusion. The Court in Taylor reasoned that the intention to commit a crime of violence together with a substantial step to commit a crime of violence cannot be a crime of violence simply because completion of the attempt would be one. Taylor, 596 U.S. at 851. However, if the defendant had the requisite specific intent to kill, and his substantial step itself involves a use, attempted use, or threatened use of physical force, then the attempt to kill a witness is categorically a crime of violence.

An attempt requires an intent to engage in criminal conduct and conduct constituting a substantial step toward the commission of the offense. United States v. Lucas, 499 F.3d 769, 781 (8th Cir. 2007) (en banc). "A substantial step is conduct such that if it had not been extraneously interrupted would have resulted in a crime." United States v. Williams, 136 F.3d 547, 553 (8th Cir. 1998) (quotation omitted). In Taylor, the Court noted that "whatever a substantial step requires" for the offense of attempted Hobbs Act robbery, it does not require the government prove any of the three elements constituting a crime of violence. 596 U.S. at 851. Once again, attempted murder is different. Rose's argument, in essence, is that an attempted murder offense only requires indirect actions that are not inherently violent -- though they would result in death if they "had not been extraneously interrupted." Although Rose is correct that force is not a required element of attempted murder, we held in Peeples that attempted murder under Iowa Code § 707.11 (1991) is a crime of violence under a sentencing statute identical to the elements clause in § 924(c)(3)(A). Because "physical force" is "violent force . . . capable of causing physical pain or injury to another person," we concluded that the offense "has as an element the use or attempted use of force." 879 F.3d at 286-87.

Although Rose was convicted under a different attempted murder statute, our reasoning in Peeples applies -- though attempted murder may involve no direct act of force, it is "impossible to cause bodily injury [or death] without applying force in the common-law sense." "That the harm occurs indirectly, rather than directly . . . does

-8-

not matter." Id. at 287, quoting United States v. Castleman, 572 U.S. 157, 171 (2014); see Dorsey, 76 F.4th at 1283 ("Even if the defendant took only a slight, nonviolent act with the intent to cause another's death, that act would pose a threat of violent force sufficient to satisfy the definition of a crime of violence" (cleaned up)). Regardless of whether the substantial step taken includes a direct act of force, it was an action that "if it had not been extraneously interrupted would have resulted in a crime" involving physical force. Rose's substantial step involved conduct, like that of any other person committing attempted murder, that would have resulted in the use of physical force had it been successful. Attempting to kill a witness categorically requires the use or attempted use of force and is a crime of violence under § 924(c)(3)(A).

We join every other circuit to consider this issue after Taylor in concluding that attempted murder qualifies as a crime of violence. See Dorsey v. United States, 76 F.4th 1277, 1282-84 (9th Cir. 2023), cert. denied, 144 S. Ct. 1005 (2024); Alvarado-Linares v. United States, 44 F.4th 1334, 1345-47 (11th Cir. 2022); United States v. Martin, No. 22-5278, 2023 WL 2755656, at *7 (6th Cir. Apr. 3, 2023), cert. denied, 144 S. Ct. 156 (2023); United States v. States, 72 F.4th 778, 787-91 (7th Cir.), reh'g denied, No. 22-1477, 2023 WL 5432933 (7th Cir. Aug. 23, 2023).

After this case was submitted, the Supreme Court issued another relevant ruling that in our view supports our conclusion. In Delligatti v. United States, 145 S. Ct. 797 (2025), a member of the mafia recruited others to commit murder, but they "abandoned this plan." Id. at 803. The Court reaffirmed that "it [is] impossible to cause bodily injury without applying *force*," and that "knowing or intentional application of force is a '*use*' of force under the provision in question." Id. at 805 (cleaned up). The Court concluded "it should go without saying, intentionally causing death counts as deliberately causing injury," and "the test for 'actual causality' is whether the victim's death would not have occurred in the absence of -- that is, but for -- the defendant's conduct." Id. at 807. Courts "prefer interpretations

of the elements clause that encompass prototypical 'crimes of violence' over those that do not." "Intentional murder is *the* prototypical 'crime of violence.'" Id. at 808.

For the foregoing reasons, the judgment of the district court is affirmed.

_____